UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

FIREMEN'S INSURANCE COMPANY OF : 
WASHINGTON, D.C., : No. 5:13-cv-3711
           Plaintiff, :
 :
    v. :
 :
TRAY-PAK CORPORATION, :
           Defendant. :

**Joseph F. Leeson, Jr.**                                                             **September 17, 2015**
**United States District Judge**

### MEMORANDUM OPINION
Plaintiff's Motion for Summary Judgment, ECF No. 24 – Granted
Defendant's Motion for Summary Judgment, ECF No. 23 - Denied

**I.**      **INTRODUCTION**

      This case represents an insurance coverage dispute between the parties, both of which have filed cross motions for summary judgment. A joint stipulation of undisputed facts has been submitted. Plaintiff, Firemen's Insurance Company of Washington, D.C. ("Firemen's"), is seeking a declaration that it has no obligation to defend or indemnify its insured, Defendant Tray-Pak Corporation ("Tray-Pak"), in connection with a lawsuit filed against Tray-Pak in the Superior Court of Connecticut, Judicial District of Middlesex at Middletown. Tray-Pak is seeking a declaration that Firemen's has a duty to defend and indemnify it in the Connecticut lawsuit. For the reasons set forth hereinafter, Tray-Pak's Motion for Summary Judgment will be denied, and Firemen's Motion for Summary Judgment will be granted.

## II.     BACKGROUND[1]

Tray-Pak maintains an occurrence-based[2] commercial general liability insurance policy ("General Liability Policy") with Firemen's that has been in effect and uninterrupted since at least February 1, 2011.  Stip. Facts ¶¶ 1-2, Ex. A, ECF No. 22.  Tray-Pak also maintains an occurrence-based[3] commercial liability umbrella insurance policy ("Umbrella Policy") with Firemen's that has been in effect continuously since at least February 1, 2011.  Stip. Facts ¶¶ 3-4, Ex. B.  The Umbrella Policy applies if the underlying insurance policy limit with the General Liability Policy is exhausted.

On or about March 22, 2013, Norpaco, Inc. ("Norpaco") filed a complaint against Tray-Pak ("Norpaco Complaint") in Connecticut State Superior Court ("Underlying Action").  Stip. Facts ¶ 5, Ex. C.  Norpaco, a company specializing in the sale of gourmet food products, alleges that in October 2011, it began producing a Deli Snacker tray product that includes crackers, cheese, pepperoni sticks, and olives.  Norpaco Compl. Ex. C, Count I ¶¶ 3-4.  In November 2011, it entered into a contract with Tray-Pak for the purchase of 100,000 polyethylene terephthalate ("PET") trays for Norpaco's use to manufacture the Deli Snacker.  Id. at Count I ¶¶ 5-9.  Norpaco alleges that prior to the purchase, Tray-Pak expressly warranted that its trays were fit for the manufacture of the Deli Snacker product.  Id. at Count II ¶ 9.  From October through

---

[1] The following facts are taken from the Complaint, the Joint Stipulation of Facts, and the parties' exhibits attached to the Joint Stipulation of Facts.

[2] The General Liability Policy provides: "insurance applies to 'bodily injury' and 'property damage' only if ... [it] is caused by an 'occurrence....'"  Stip. Facts, Ex. A (Coverage Form, Section I, Coverage A at (1)(b)(1)).  An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Stip. Facts, Ex. A (Coverage Form, Section V(13)).

[3] The Umbrella Policy provides: "insurance applies to 'bodily injury' and 'property damage' only if ... [it] is caused by an 'occurrence....'"  Stip. Facts, Ex. B (Coverage Form, Section I, Coverage A(1)(b)(1)).

December 2011, Norpaco sold the Deli Snacker product to the Loblaws grocery store chain. Id. at Count I ¶ 10.  On December 29, 2011, Loblaws informed Norpaco that the Deli Snacker was defective because the plastic seal did not adhere to the trays causing the cheese to become moldy. Id. at Count I ¶ 11.  Norpaco retained a third party to conduct testing on the trays, on the film used to seal the Deli Snacker product, and on the sealing equipment. Id. at Count I ¶ 12.  The results of the tests indicated that the PET trays were defective. Id. at Count I ¶ 13.  Norpaco alleges that it incurred expenses of approximately $259,408.78 in conducting its tests, in destroying the defective Deli Snacker products, in lost profits, and in purchasing a special film to use with the PET trays. Id. at Count I ¶¶ 15-20.  The state court complaint against Tray-Pak alleges breach of contract, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligence, and negligent misrepresentation.  Norpaco Compl.

Tray-Pak emailed the Norpaco Complaint to Firemen's on March 28, 2013, the same day Tray-Pak was served with the Norpaco Complaint.  Stip. Facts, ¶ 7, Ex. D.  Tray-Pak asked Firemen's "if we should engage our law firm at this time." Id.  "On March 29, 2013, Firemen's acknowledged receiving the Norpaco Complaint."  Stip. Facts, ¶ 9.  Firemen's sent an email to Tray-Pak on April 4, 2013, advising that is was "having the complaint allegations reviewed by our coverage counsel in view of the breach of contract and warranty allegations," and that Firemen's had requested an extension of time to respond to the complaint from Norpaco.  Stip. Facts ¶ 10, Ex. E.  In response to a status update request from Tray-Pak, on May 1, 2013, Firemen's stated that it had received an extension to respond to the complaint and that it was waiting on coverage counsel's input.  Stip. Facts ¶ 12, Ex. F.  On May 6, 2013, Firemen's emailed Tray-Pak that the issue is whether the Liability Policy should defend and indemnify, that

it was referring the matter to claim management for instruction, and that Tray-Pak should have its corporate counsel review the complaint.  Stip. Facts ¶ 13, Ex. G.  By letter dated May 9, 2013, Firemen's informed Tray-Pak that it was denying coverage because the allegations do not arise from an "occurrence" under the General Liability and Umbrella Policies.  Stip. Facts ¶ 14, Ex. H.  This is the first time Firemen's notified Tray-Pak that it would not defend or indemnify Tray-Pak in the Norpaco Complaint.  Stip. Facts. ¶ 14.

On June 24, 2013, Firemen's informed Tray-Pak that it was willing to provide Tray-Pak with a defense to the Norpaco Complaint subject to a full and complete reservation of rights.  Stip. Facts ¶ 15, Ex. I (explaining why Firemen's does not believe it owes a duty to defend).  "Firemen's is currently providing Tray-Pak with a defense in the Underlying Action, subject to the reservation of rights communicated in the June 24, 2013 letter."  Stip. Facts ¶ 16, Ex. I.

On June 26, 2013, Firemen's filed a declaratory judgment complaint in the United States District Court for the Eastern District of Pennsylvania, seeking a determination of whether Tray-Pak is entitled to a defense and/or indemnification under the General Liability and Umbrella policies.  Compl., ECF No. 1.  Firemen's alleges that neither the General Liability Policy nor the Umbrella Policy cover Tray-Pak for the Underlying Action because the allegations in the Norpaco Complaint are for breach of contract and do not allege an "occurrence."  Compl. ¶¶ 44-52, 60-67.  Additionally, Firemen's contends that exclusions b ("Contractual Liability" exclusion) to the General Liability Policy and Umbrella Policy exclude coverage for claims sounding in breach of contract.  Compl. ¶ 53, 68.  Firemen's further alleges that the "Your Product" exclusions[4] to the General Liability Policy and Umbrella Policy exclude coverage for

---

[4] The Complaint mistakenly identifies the "Your Product" exclusion of the General Liability Policy as exclusion "j;" but correctly identifies it as exclusion "k" in subsequent filings.  Compare Compl. ¶¶ 36, 56-58, with Pl. Mot. pp. 9, 16, Ex. 5, ECF No. 24.

"'Property Damage' to 'your product' arising out of it or any part of it," which includes the PET trays sold by Tray-Pak. Compl. ¶¶ 36, 56-57, 71. Finally, Firemen's alleges that "the Products/Completed Operations Hazard Exclusion to the Umbrella Policy excludes coverage for property damage occurring away from Tray-Pak's premises, and arising out of Tray-Pak's product of work, unless the product is still in Tray-Pak's physical possession...." Compl. ¶ 73. Firemen's contends that the Norpaco Complaint alleges that the damage took place at Norpaco's when it filled and sealed the PET trays. Compl. ¶ 74. Firemen's filed a Motion for Summary Judgment based on these allegations on May 30, 2014. Pl. Mot., ECF No. 24.

On May 30, 2014, Tray-Pak filed a Motion for Summary Judgment. Def. Mot., ECF No. 23. Tray-Pak argues that the negligence claims in the Norpaco Complaint trigger Firemen's duty to defend and indemnify because all the underlying claims are based on alleged "occurrences" that resulted in property damage to Norpaco. Def. Mot. 1. Tray-Pak also contends that Firemen's is estopped from denying coverage because it severely prejudiced Tray-Pak when it induced Tray-Pak to believe it would provide a defense, and failed to notify Tray-Pak that it was denying coverage or that Tray-Pak should obtain counsel prior to the expiration of the time in which the action could be removed to federal court. Def. Mot. 1-2.

The parties filed a Joint Stipulation of Facts Regarding Plaintiff's and Defendant's Cross Motions for Summary Judgment on May 15, 2014. Stip. Facts. Plaintiff and Defendant also filed Responses to the Motions for Summary Judgment. ECF Nos. 26-27. On August 20, 2014, the Honorable James Knoll Gardner held oral argument on the motions. See ECF Nos. 29-31. This case was reassigned from Judge Gardner to the Undersigned on February 24, 2015. ECF No. 32.

**III.     STANDARD OF REVIEW**

"Through summary adjudication the court may dispose of those claims that do not present a 'genuine issue of material fact.'" Ill. Union Ins. Co. v. Hydro Int'l, PLC, 929 F. Supp. 2d 365, 371 (M.D. Pa. 2013) (quoting Fed. R. Civ. P. 56(c)). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd of Carpenters and Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56; Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radi Corp., 475 U.S. 574, 586 (1986) (stating that the non-

moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993).

IV.   ANALYSIS

The parties agree to the material facts at issue in this case; therefore, the dispute can be resolved as a matter of law. The Court is confronted with three questions: (1) do the allegations in the Norpaco Complaint constitute an "occurrence" under the insurance policies so that coverage is afforded to Tray-Pak; (2) do any exclusions in the insurance policy negate coverage; and (3) does the doctrine of estoppel apply to the facts of the case to preclude Firemen's from denying coverage to Tray-Pak. The Court is required to address whether Firemen's has a duty to defend, and possibly an additional duty to indemnify.[5]

---

[5] "An insurance company's duty to defend is broader than the duty to indemnify." Zurich Am. Ins. Co. v. R.M. Shoemaker Co., No. 12-873, 2012 U.S. Dist. LEXIS 35760, at *11 (E.D. Pa. Mar. 16, 2012), affirmed 519 Fed. Appx. 90, 92-93 (3d Cir. 2013). "[T]here may be a duty to defend without a duty to indemnify." Frog v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999). However, if "a court finds that there is no duty to defend, it must necessarily hold that there is no duty to indemnify either." Westfield Ins. Co. v. Bellevue Holding Co., 856 F. Supp. 2d 683, 702 (E.D. Pa. 2012).

"The rules of analysis of insurance policies in Pennsylvania[6] are well established. The goal of interpreting an insurance policy, like that of interpreting any other contract, is to determine the intent of the parties." Meyer v. CUNA Mut. Ins. Soc'y, 648 F.3d 154, 163 (3d Cir. 2011) (internal citations omitted). "The court looks first to the terms of the policy." Zurich Am. Ins. Co., 2012 U.S. Dist. LEXIS 35760 at *11 ("[T]he interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court." (citing Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006))), affirmed 519 Fed. Appx. 90, 92-93 (3d Cir. 2013). When the language in the policy is clear and unambiguous, the court must give effect to that language, but when the policy is ambiguous, it must be construed in favor of the insured. Meyer, 648 F.3d at 164; Zurich Am. Ins. Co., 2012 U.S. Dist. LEXIS 35760 at *11-12. "[W]here a plaintiff's claim is foreclosed by the plain language of the contract, summary judgment is appropriate." Allegheny Design Mgmt. v. Travelers Indem. Co. of Am., 572 Fed. Appx. 98, 100 (3d Cir. 2014).

To determine if an insurance policy provides coverage, the court must look to the facts alleged in the underlying complaint, not to the cause of action pled. Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 517-18 (3d Cir. 2012) (quoting QBE Ins. Corp. v. M & S Landis Corp., 915 A.2d 1222, 1225 (Pa. Super. 2007)); Ill. Union Ins. Co., 929 F. Supp. 2d at 372 ("'[T]he particular cause of action that a complaint pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the

---

[6] "[T]he choice of law rules of the forum state, Pennsylvania, apply when a federal court is sitting in diversity." Specialty Surfaces Int'l v. Cont'l Cas. Co., 609 F.3d 223, 229 (3d Cir. 2010) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). In Frog, the Third Circuit Court of Appeals determined that because the "policy was issued by a Pennsylvania agent to a Pennsylvania corporation," "the insurance contracts are governed by Pennsylvania law." Frog, 193 F.3d at 745-46. Similarly here, the General Liability and Umbrella Policies were issued by an agent in Wyomissing, Pennsylvania to Tray-Pak Corporation in Reading, Pennsylvania. See Stip. Facts, Ex. A.

complaint.'" Mut. Benefit Ins. Co. v. Haver, 555 Pa. 534, 725 A.2d 743, 745 (1999) (citations omitted)."). The court may not, however, look beyond the allegations in the underlying complaint in deciding whether there was an "occurrence" and/or a duty to defend. See Kvaerner Metals Div. of Kvaerner U.S., Inc., 908 A.2d at 896. "In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." Frog, 193 F.3d at 746.

       A.     An "occurrence" under the insurance policies

Six counts are set forth against Tray-Pak in the Underlying Action: Count I - breach of contract, Count II - breach of express warranty, Count III - breach of implied warranty of merchantability, Count IV - breach of implied warranty of fitness for a particular purpose, Count V - negligence, and Count VI - negligent misrepresentation. Stip. Facts, Ex. C. It is the last two counts, for negligence and negligent misrepresentation, upon which Tray-Pak is relying in contending that Firemen's owes a duty to defend and indemnify.[7]

The General Liability Policy and the Umbrella Policy require Firemen's to defend and indemnify Tray-Pak for lawsuits for property damage caused by an "occurrence." In the cross-motions for summary judgment, Firemen's argues that coverage is being sought for allegations of breach of contract, which do not constitute an "occurrence" under the policies. Tray-Pak, on the other hand, contends that the failure of the plastic to adhere to the PET trays was unexpected, unintentional, and undesirable and therefore fits within the definition of "occurrence."

---

[7] "Under Pennsylvania law, when an insured tenders multiple claims to an insurer for defense, the insurer is obligated to undertake defense of the entire suit as long as at least one claim is potentially covered by the policy. As to indemnification, however, the insurer is obligated to its insured only for those damages which are actually within the policy coverage." Caplan v. Fellheimer Eichen Braverman & Kaskey, 68 F.3d 828, 831 (3d Cir. 1995) (citations omitted).

"In order for a claim to trigger coverage, there must be a causal nexus between the property damage and an 'occurrence,' i.e., a fortuitous event." Specialty Surfaces Int'l, 609 F.3d at 231; Zurich Am. Ins. Co. v. R.M. Shoemaker Co., 519 Fed. Appx. 90, 92-93 (3d Cir. 2013). Under Pennsylvania law, "a breach of contract claim could not constitute an 'occurrence' in a commercial general liability policy." Specialty Surfaces Int'l, 609 F.3d at 238; Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F.3d 591, 598 (3d Cir. 2009) (explaining that "[t]he purpose and intent of a general liability insurance policy is to protect the insured from essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking") (quotations omitted). "[T]he crucial inquiry dictating whether a general liability insurer must defend its insured under an occurrence-based policy is whether an event was sufficiently fortuitous from the perspective of the insured to qualify as an 'occurrence.'" Zurich Am. Ins. Co., 519 Fed. Appx. at 91-93. "Faulty workmanship, even when cast as a negligence claim, does not constitute such an event." Specialty Surfaces Int'l, 609 F.3d at 231; Nationwide Mut. Ins. Co., 562 F.3d at 596 ("[I]t is largely within the insured's control whether it supplies the agreed-upon product, and the fact that contractual liability flows from the failure to provide that product is too foreseeable to be considered an accident."). Flawed product-related work done in performance of a contract, as opposed to a product that actively malfunctions, cannot give rise to an "accident." Westfield Ins. Co., 856 F. Supp. 2d at 695.

The District Court in Nat'l Fire determined that a claim stemming from "breaches of standards of care imposed by law as a matter of social policy, independent of the parties' bargain ... may be a covered 'active malfunction.'" See Nat'l Fire Ins. Co. v. Robinson Fans Holdings, Inc., No. 10-1054, 2011 U.S. Dist. LEXIS 37941, at *11-12 (W.D. Pa. Apr. 7, 2011). The Court explained:

> Thus, just as the term "negligence" cannot per se convert a contract into a tort claim, the presence of a contract, or breach of contract claim, does not inevitably convert every related claim into one of "faulty workmanship." Instead, there is a discernible distinction between a product that actively malfunctions, which could give rise to an "accident," and flawed product-related work done in performance of a contract, which cannot. Cases suggest a material difference between a claim that stems from a "breach[] [of] duty imposed by mutual consensus" — or an alleged failure to live up to bargained-for standards — and one that stems from breaches of standards of care imposed by law as a matter of social policy, independent of the parties' bargain. See [Nationwide Mut. Ins. Co. v. CPV Int'l, Inc., No. 06-363, 2007 U.S. Dist. LEXIS 86506, at *19 (M.D. Pa. Nov. 26, 2007)]. The former constitutes uncovered "contractual claims of poor workmanship," even if couched as negligence; the latter, however, may be a covered "active malfunction." Cf. Erie Ins. Exchange v. Abbott Furnace Co., 2009 PA Super 88, 972 A. 2d 1232, 1238 (Pa. Super. Ct. 2009) []. In other words, negligent or defective design, in a case in which the product is designed pursuant to and in accordance with a contract, is necessarily part and parcel of the contract performance. In contrast, if a product was negligently or defectively designed, and then supplied pursuant to a subsequent contract, the design work might be measured against tort standards of care rather than agreed-upon terms.

Id. at *11-12. "The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." Tig Ins. Co. v. Nobel Learning Cmtys., Inc., No. 01-470, 2002 U.S. Dist. LEXIS 10870, at *31 (E.D. Pa. June 18, 2002) (quoting Redevelopment Auth. v. International Ins. Co., 454 Pa. Super. 374, 392 (Pa. Super. 1996); Phico Ins. Co. v. Presbyterian Medical Servs. Corp., 444 Pa. Super. 221, 228 (Pa. Super. 1995)).

In Keystone Filler, the insured, a company manufacturing carbon-based products, entered into a sales agreement with a third party for the sale of Mineral Black 123, which the third party used as a component of plastisol, which is used in the manufacture of goods such as automobile filters. Keystone Filler & Mfg. Co. v. Am. Mining Ins. Co., 179 F. Supp. 2d 432 (M.D. Pa. 2002). The third party complained that one of the batches of Mineral Black 123 contained oversized particles resulting in damage to itself and to two of the third party's customers, and rendering the batch unusable for the manufacture of plastisol. Id. at 436-37, 443. The District

Court determined that the "main focus of the relationship between Keystone and [the third party] was the sales agreement relating to the Mineral Black 123. The Mineral Black 123 was manufactured in a way that did not conform to [the third party's] requirements for the manufacture of the plastisol; any negligence or product defect was not the 'gist' of [the action]." Id. at 442-43.  Applying "the tort/contract distinction," the Court found that "while Keystone may have manufactured a product that did not meet [the third party's] expectations, Keystone was under no duty imposed by social policy to make the Mineral Black 123 a certain size. Rather, Keystone breached a duty imposed by mutual consensus with [the third party]." Id. at 442-43.  Accordingly, the Court concluded that the insurer did not have a duty to defend any underlying claim against Keystone by the third party because there was no "occurrence." Id.

Tray-Pak suggests that Keystone Filler is distinguishable because it did not involve an "active malfunction" that amounted to an accident.  Citing Nat'l Fire, Tray-Pak claims that the failure of the plastic seal film to adhere to the PET trays constituted an active malfunction.  Fireman's disagrees, arguing that the alleged active malfunction of the PET trays to adhere to the seal film related to Tray-Pak's contractual duties with Norpaco to provide trays to which such seal film would adhere.

The Norpaco Complaint makes it clear that Norpaco had a contract with Tray-Pak for the purchase of 100,000 PET trays.  Stip. Facts, Ex. C, Compl., Count I ¶ 6.  The first four counts of the Complaint are focused on contract-related causes of action, and the last two counts of the Complaint pertain to negligence and negligent misrepresentation, incorporating by reference the allegations of the first four counts.  See Stip. Facts, Ex. C.  The allegations in the Norpaco Complaint against Tray-Pak amount to a claim that the PET trays did not conform to a contractually specified and required performance standard:  namely that the PET trays were not

fit for the manufacture of the Deli Snacker product because the plastic seal film failed to adhere to the trays. Stip. Facts, Ex. C., Compl. Count I ¶ 11, Count II, ¶ 16, Count III ¶ 15, Count IV ¶ 17, and Count VI at ¶ 25. There is nothing in the Norpaco Complaint alleging that the trays manufactured by Tray-Pak were otherwise defective. In fact, Norpaco alleges that it had to "purchase special film for use with the PET trays provided by Tray-Pak," which confirms that the trays were not actually defective. Id. at ¶ 19.

Tray-Pak was under no duty imposed by social policy to make PET trays that would adhere to a certain plastic seal film; therefore, the PET trays did not actively malfunction. Rather, the alleged breach was of a duty imposed by mutual consensus between Tray-Pak and Norpaco, for which Firemen's has no duty to defend. See Keystone Filler & Mfg. Co., 179 F. Supp. 2d at 442-43. Because the Norpaco Complaint sounds in breach of contract, there was no "occurrence," and the claim is not covered under Firemen's insurance policies. See Westfield Ins. Co., 856 F. Supp. 2d at 691 ("'An insurance company's duty to defend a suit against an insured is determined solely on the basis of the allegations of the complaint in the underlying action.'" (quoting Nat'l Fire Ins. Co., 2011 U.S. Dist. LEXIS 37941)).

Tray-Pak's reliance on Indalex to claim that there was an "occurrence" based on an active malfunction, and not merely bad workmanship, is unpersuasive. The policy at issue in Indalex defined an occurrence as "an accident, including continuous or repeated exposure to conditions, which results in Bodily Injury or Property Damage neither **expected nor intended from the standpoint of the Insured**." Indalex Inc. v. Nat'l Union Fire Ins. Co., 83 A.3d 418, 425-46 (Pa. Super. Ct. 2013) (emphasis in original). The Court explained that the "policy at issue provides that it is the insured's subjective viewpoint, and damages such as mold related health issues were arguably not expected." Id. The Court distinguished this "subjective definition" from the policy

at issue in Kvaerner, which defined occurrence as "an accident, including continuous or repeated exposure to substantially the same or general harmful conditions." Id. (citing Kvaerner, 908 A.2d at 897). This is the same definition of occurrence as set forth in the policies at issue in the instant action. See Def. Mot. Ex. 24-5, Commercial General Liability Coverage Form p. 14; Def. Mot., Ex. 24-6, Commercial Liability Umbrella Coverage Form p. 15. Tray-Pak has failed to cite to any legal authority for the proposition that a breach of contract claim can be transformed into an "occurrence" as that term is defined in Firemen's insurance policies.

Therefore, the Norpaco Complaint does not allege an "occurrence" to trigger Firemen's duty to defend.[8]

B.  Estoppel

Tray-Pak argues that Firemen's is estopped from denying coverage because it induced Tray-Pak to believe that it would defend Tray-Pak in the underlying Norpaco action, but failed to either promptly provide a defense in the Underlying Action or promptly notify Tray-Pak that it declined coverage. Tray-Pak claims that on March 28, 2013, when it received the Norpaco Complaint, it directly asked Firemen's if it should engage counsel, but Firemen's waited more than a month before advising Tray-Pak to obtain counsel, at which time it was too late to remove the Underlying Action to federal court. Tray-Pak alleges that it relied on Firemen's inducement on March 29, 2013, when Firemen's assured Tray-Pak that it would look over the Complaint that day; on April 4, 2013, when Firemen's informed Tray-Pak that it was reviewing the Complaint; and on April 9, 2013, when Firemen's indicated that it had obtained an extension of time to complete such review.

---

[8] Since this Court has found that Firemen's does not have a duty to defend, it is unnecessary to examine whether any exclusions to the General Liability Policy and Umbrella Policy apply.

Firemen's responds that insurance coverage cannot be created by means of estoppel. Further, Firemen's asserts that the April 4, 2013, communication put Tray-Pak on notice that Firemen's had not decided whether it would cover the claims. Firemen's contends that the April 9, 2013, email also advised Tray-Pak that it was still considering coverage. Firemen's argues that Tray-Pak had sufficient time after being advised of the coverage issue to hire counsel and seek removal. Finally, Firemen's contends that Tray-Pak has failed to establish prejudice in not having the case removed to federal court.

"[T]he elements of equitable estoppel are (1) an inducement, whether by act, representation, or silence when one ought to speak, that causes one to believe the existence of certain facts; (2) justifiable reliance on that inducement; and (3) prejudice to the one who relies if the inducer is permitted to deny the existence of such facts." Chemical Bank v. Dippolito, 897 F. Supp. 221, 224 (E.D. Pa. 1995) (citing Zivari v. Willis, 611 A.2d 293, 295 (Pa. Super. 1992)). "To constitute inducement, a person must commit an act or forbearance that causes a change in condition resulting in disadvantage to the one induced." Id. (citing Novelty Knitting Mills, Inc. v. Siskind, 457 A.2d 502, 503 (Pa. 1983)). "[T]he insured must establish that the insurer represented facts that caused the purported insured to believe that he had coverage and rely to his detriment on that belief." State Auto Prop. & Cas. Ins. Co. v. Frank Lagrotta, Sylvan Heights Realty, LLC, No. 11-457, 2012 U.S. Dist. LEXIS 130255, at *30 (W.D. Pa. Aug. 14, 2012) (internal quotations omitted). "The assessment of detrimental reliance on an insurer's conduct requires an analysis of the facts relating to whether the party asserting estoppel has been prejudiced by the conduct of the insurer. Consequently, only where the insurer's conduct has caused actual prejudice may courts apply the principle of estoppel." Id. (internal quotations

omitted). "[P]rejudice may not be presumed, it must be conclusively established in order to effect an estoppel." Merchants Mut. Ins. Co. v. Artis, 907 F. Supp. 886, 892 (E.D. Pa. 1995).

"It is well-established under Pennsylvania law that the burden rests on the party asserting estoppel to establish the defense by clear, precise and unequivocal evidence." Chrysler Credit Corp. v. First Nat'l Bank & Trust Co., 746 F.2d 200, 206 (3d Cir. 1984); Nationwide Prop. & Cas. Ins. Co. v. Shearer, No. 14-735, 2015 U.S. Dist. LEXIS 31126, at 23-24 (W.D. Pa. Mar. 13, 2015). "[T]he insured party must introduce evidence that it would be actually prejudiced by the insurer's delay in disclaiming coverage." Shearer, 2015 U.S. Dist. LEXIS 31126 at *33. "[U]nsupported assertions, conclusory allegations, or mere suspicions are not enough." Id. (internal quotations omitted).

From the time of its receipt of the Norpaco Complaint, Firemen's expressed its "concern" that the Complaint contained "both contract and negligence allegations." See Stip. Facts, Ex. D (email dated March 29, 2013). This issue was noted again in the April 4, 2013, e-mail, which stated that "[Firemen's is] having the complaint allegations reviewed by our coverage counsel in view of the breach of contract and warranty allegations." Stip. Facts, Ex. E. The email dated April 9, 2013, advised Tray-Pak that "[Firemen's] obtained a 20 day extension from Norpaco's attorney ... for our coverage attorney to complete their review of the complaint allegations and the policy." Stip. Facts, Ex. F. On May 9, 2013, Firemen's sent a letter notifying Tray-Pak that its coverage review was complete and there was no duty to defend because all claims are based in the alleged breach of contract. Stip. Facts, Ex. H.[9]

---

[9] Tray-Pak asked Firemen's to reconsider its decision and, on June 24, 2013, Firemen's informed Tray-Pak that it reconsidered its coverage position and while Firemen's held its position that it has no duty to defend, Firemen's agreed to defend Tray-Pak in the Underlying Action "subject to a full and complete reservation of rights." Stip. Facts, Ex. I. Regardless, Pennsylvania law provides that an insurer "cannot be estopped from asserting its coverage defenses ... because

At no point did Firemen's represent that the Norpaco Complaint was covered under Tray-Pak's policies. See Chemical Bank, 897 F. Supp. at 224 ("Under Pennsylvania law, the doctrine of equitable estoppel is applied to prevent a person from taking a position that is inconsistent with a position previously taken or acting differently than the manner in which that person induced another person by word or deed to expect.") (internal quotations omitted); Frank Lagrotta, Sylvan Heights Realty, LLC, 2012 U.S. Dist. LEXIS 130255 at *30. Rather, Firemen's immediately expressed its coverage concerns in light of the contract claims. Accordingly, Tray-Pak has not established that Firemen's conduct would "operate as a fraud" if not estopped. See Titan Indem. Co. v. Cameron, No. 01-5435, 2002 U.S. Dist. LEXIS 2657, at *8 (E.D. Pa. Feb. 19, 2002); Shearer, 2015 U.S. Dist. LEXIS 31126 at *23-24 ("To establish estoppel in the insurance context, there must be such conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party who has taken or neglected to take some action to his own prejudice in reliance thereon.") (internal quotations omitted).

Having failed to show that Firemen's induced Tray-Pak to believe that it would defend the Underlying Action, Tray-Pak also cannot establish that it justifiably relied on such inducement to its prejudice and the estoppel claim is denied.

**V.   CONCLUSION**

The underlying state court action arises from Tray-Pak's alleged breach of contract with Norpaco, pursuant to which it agreed to provide 100,000 PET trays for Norpaco's use to manufacture the Deli Snacker product. The Norpaco Complaint alleges that its plastic seal film

---

Pennsylvania law expressly gives insurers [] 'the option of defending subject to a reservation of its right later or simultaneously to contest coverage.'" Shearer, 2015 U.S. Dist. LEXIS 31126 at *24-25 (quoting Babcock & Wilcox Co. v. Am. Nuclear Insurers, 76 A.3d 1, 12 (Pa. Super. Ct. 2013)). Tray-Pak does not challenge Firemen's reservation of rights.

did not adhere to the trays, causing the product to spoil.  Despite the negligence counts, the Norpaco Complaint sounds in breach of contract.  Further, the failure of the seal film to adhere to the PET trays was not an "active malfunction" because the allegations against Tray-Pak amount to a claim that the trays did not conform to a contractually specified and required performance standard, not that there was a breach of the standards of care imposed by law as a matter of social policy.  Accordingly, the Norpaco Complaint does not allege an "occurrence" as defined under the insurance policies to trigger Firemen's duty to defend.  Moreover, Tray-Pak has not established that Firemen's is estopped from denying coverage because at no time did Firemen's induce Tray-Pak to believe that it would defend the Underlying Action.

For the reasons set forth in this Memorandum, Defendant's Motion for Summary Judgment will be denied and Plaintiff's Motion for Summary Judgment will be granted.

A separate Order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge